HODGSON VS. PAYSON & LORMAN.				DEC. 1813.

APPEAL from a decree of the Court of Chancery, dismissing the bill of the complainant, (now appellant.) The case is sufficiently stated in the decree of the chancellor.

KILTY, Chancellor, (July term 1807.) The object of the complainant is to be released from the payment of an inland bill of exchange, drawn by him on his agent, Clementson, for $5,353 33, accepted by Clementson, and endorsed by R. Murray, & Co. in whose favour the bill was drawn, to Payson, one of the defendants, for collection, and not as a payment to him, and by Payson endorsed to Lorman, the other defendant. The bill in the conclusion prays that the defendants may be compelled to bring the said bill of exchange into court, to be delivered up to the complainant, or that they be compelled to pay to him the full amount for which it was drawn, with legal interest thereon; and there is a prayer for general relief. The answer, after relating the manner in which the bill, (with another which had been paid,) was received, and the time, states, that before and after that time Payson was employed by, and transacted business for, the said R. Murray, & Co. on commission, and particularly in selling and endorsing their bills of exchange. That before the acceptance of Clementson became due, he (Payson,) had sold and endorsed for R. Murray, & Co. bills of exchange drawn by them for upwards of £20,000 sterling, and that finding he was in danger, and could get no other indemnity, he considered himself entitled to hold the acceptance as the creditor of R. Murray, & Co. for his security to the extent thereof. Payson further states, that he is wholly ignorant of the consideration of the bill, (which consideration was set forth and relied on by the complainant,) and in the conclusion of the argument of the counsel of the defendants, it is remarked, that the claim of the complainant against R. Murray, & Co. is not in any shape admitted, and that it is believed nothing is due to him.

After a consideration of every part of the proceedings, the chancellor is not satisfied that the complainant has made out a case to entitle him to the aid of this court, independent of the lien set up by the defendant.

*[margin note]* Hodgson vs Payson & Lorman. Where a factor endorses bills for his principal, such liability, with a reasonable apprehension of danger, gives him as factor a lien on other bills then in his hands belonging to his principal, to meet the event of his indorsement; and the fact of the factor's receiving a commission on his endorsements, does not in any way affect the general question as to his lien as factor.

1813.

Hodgson
vs
Payson & Lorman

[The chancellor here examined some questions of fact, but as they were not made the grounds of his decree, or of the decree of the court of appeals, it is thought unnecessary to give that part of his opinion.]

The chancellor, however, does not mean to give so decided an opinion on this part of the case as to make it the ground of his decree, although it may influence him in regard to the costs. As to the other parts, there are some points so clearly established, as not to admit of any doubt, and others, (and among them the one most material,) that are more questionable.

When the complainant delivered R. Murray & Co. at New-York, the bill drawn on Clementson, he empowered them to negotiate it as they might think proper, subject, when negotiated in due time, to be paid by him, on the failure of Clementson, without any inquiry into the consideration, which, against a bona fide holder for a valuable consideration, he was not competent to go into. If then R Murray & Co. instead of sending it to their agent had passed it away for goods, or in payment to a creditor, the liability of Clementson, the acceptor, and of the complainant, as drawer, would have been fixed, leaving the latter to his remedy against R. Murray & Co. on their sale or exchange of the seven bills on London.

Supposing no other person to have had a just claim, it was competent for the complainant to stop the payment of the bill on Clementson, or of R. Murray & Co. to give it up in consequence of the consideration failing.

If the bill had come into the hands of the assignees of R. Murray & Co. on their bankruptcy, it would have been subject to the equitable lien against the firm, and it might have been a question how far the bill, being given for the specific consideration of the seven bills drawn on London, which were protested, and not on a general account, should operate in favour of the complainant against the general creditors. It appears clearly, that after the delivery of the bill on Clementson to R. Murray & Co. and their endorsement of it to Payson, the right of the complainant, on obtaining the order of the 23d of July 1796, to deliver up the bill, could not be better than that of R. Murray & Co. would have been if the order had not been made. And it may here be noticed as an undeniable principle, that the complainant had not the power, by his election, of this

mode of securing himself, to vary the rights of *R. Murray*, & Co. and their factor. A consideration, therefore, of the right and remedy in that case of *R. Murray* & Co. will lead to that of the defendant, *Payson*, as their factor, on which the event of this cause must rest.

The bill having been endorsed to *Payson*, not in payment, but as agent or factor, and for collection only, it follows of course, that he had it subject to the order of his principal, unless he could show a right to retain it, and that in the mean time it was his duty to receive the money, which, (with the same exception) would be also subject to their order.

The chancellor considers the situation of *Payson*, as factor, sufficiently established by proof to entitle him to all the advantages resulting from that character.

If, upon the general balance of the account between *R. Murray* and Co. and *Payson*, they had been, at the time of the order for delivery, or of any demand by them, indebted to *Payson*, there could be no doubt, on principle or on authorities, of his right to retain; and the right, (supposing the balance so due,) would be the same, whether the property in his hands consisted of money, goods, negotiable paper, or other evidences of debts.

There is certainly no evidence of any balance being actually due to, or any claim by *Payson*, excepting his liability on the bills which he had endorsed; and therefore it remains to be examined, whether this liability, with the apprehension of danger, as far as it appears to have been reasonable from the evidence in the cause, gave to him as factor a lien on the bill in question to meet the event of his endorsement, such as he would have had upon the general balance of his account? This question is to be determined according as the principle may appear to be established, independent of the entries or charges made by *Payson* in his books, which is not considered a very material circumstance. And it must be observed also, that the fact of *Payson's* receiving a commission on the endorsement of bills is not viewed as in any way affecting the general question as to his lien as a factor.

The chancellor has examined the authorities cited by the counsel, (some of which are relied on by both parties,) and such others as he has been able to find having a bearing on the question; and he does not find it so fully

1813.

Hodgson

vs

Payson & Lorman

determined on either side, as might have been expected in a transaction which must frequently occur between principal and factor; but from these authorities, as far as they go, and reasoning from analogy, and the justice of the position, he is led to determine that the lien does exist in the one case as well as in the other.

The expression of Lord *Mansfield* in *Godin vs. The London Assurance Company*, 1 *Burr*. 489, and 1 *W. Blk. Rep.* 103, is, that a factor to whom a balance is due, has a lien upon all goods of his principal, so long as they remain in his possession; and in *Kruger vs. Wilcox, Ambl.* 252, therein referred to, it is laid down, that if there is a course of dealings, and general account between the merchant and factor, and a balance is due the factor, he may retain for such balance. In *Drinkwater vs. Goodwin, Cowp.* 251, Mr. *Buller*, for the plaintiffs, argued, that all the money paid by the factor was paid since the action, so that at the commencement of the suit, the factor was no creditor at all. And although this was admitted, it was determined that he had a lien to the amount for which he was bound in the bond, though not paid till after the suit. The reasons for this decision, however, are not sufficiently clear. The judge observed, that the agreement was, that the factor should have a lien; whereas there was no express agreement to that effect, and it could be only an implied one. He then used the following remark—"The factor knew very well that for a general balance of his account he had a lien; but he doubted whether such lien would extend to a case in which he is only surety for his principal, and therefore he proposed the terms contained in the letter." This doubt is not resolved by the court, any further than by inference from their decision in the suit. The right of the principal to maintain an action for goods sold by his factor, against the purchaser, and to sue for the property remaining in the factor's hands, are in the above case considered on the same footing, and both qualified with this restriction, namely, that the principal is not indebted to the factor. The doubt or uncertainty which has been mentioned of its extending to the case of the factor being only a surety, still remains, but the chancellor considers the determination on the whole as favourable to the lien claimed by *Payson*; and he observes, that *Espinasse*, (2 *Dig.* 582,) lays it down as a principle found-

ed on the same case, that a factor has a lien for any moneys due, or for any engagement he enters into on account of his principal.

1813.

Hodgson
vs
Payson & Lerman

The case of *Davis vs. Bowsher,* 5 *T. R.* 488, establishes the position, that no person can take any paper securities out of the hands of his banker, without paying him his general balance; but the chief justice states, that the party had a right to demand the bill on paying all that was then due to the banker.

In *Kinlock vs. Craig,* 3 *T. R.* 119, 783, it appears from the special verdict that the factors had accepted bills to a large amount on the faith of promised consignments of goods, and were thereupon considered as having a balance due to them, although they had (independent of their acceptance,) the sum of £2382 in their hands, belonging to the company. The decision was made on the ground of their having never had the possession of the goods; from which it may be inferred, that if the possession had been with them, they would have had a lien to the amount of their acceptance, though not then paid. The Chief Baron, in delivering the opinion of the judges in the House of Lords, stated that the bankrupt could have no lien, as the goods never got into his possession. He remarked also, that the promise to consign the goods was an executory agreement, for the nonperformance of which, only a right of action accrued, but that no property in the goods was thereby vested in the consignees. It does not, however, follow from this remark, that if the property had been vested by its getting into their possession, they would have been bound to give up their hold upon it, and to resort to their action on the agreement.

In the case of *Jourdaine vs. Lefevre,* 1 *Esp. Rep.* 66, Lord *Kenyon* expressed his opinion that a banker, in a transaction such as the one before him, had a lien on a note so paid in, and of course a right to retain it for his balance, or as a security for a general account between him and the party who paid it in.

In reasoning on the analogy of the cases, the chancellor cannot perceive any reason or equity in restricting the lien of a factor to a balance actually due, instead of extending it to engagements by which he is bound, and for which he must afterwards be a debtor, unless relieved by his principal; and he does not perceive with what semblance of jus-

1813.

Hodgson
vs
Payson & Lorman

tice a principal could demand of his factor the payment of $5000 in his hands, when the factor might be obliged to pay the like sum for him the succeeding week, without a prospect of indemnity.

The particular times at which such retainers may be resorted to, and the amount of them, must depend on the relative situation of the parties in each case; but it may be observed, that if the danger is slight or remote, it is the more easily guarded against by a counter security to the factor.

In the present case, the chancellor is of opinion, that the defendant, *Payson*, was justified in refusing to deliver up the acceptance of *Clementson* on the order of *R. Murray*, & Co. on the ground of his engagements as endorsor for them; taking into consideration also the facts proved in the case, the benefit of which he is entitled to, even supposing that he might have succeeded with less proof.

It appears that his apprehensions were not groundless—That he was called on, and actually paid on his endorsements, (although the time is not stated,) sums exceeding the amount of *Clementson's* acceptance, which if he should be entitled to retain it, will go only in part towards his reimbursement.

If the right of *Payson*, as against *R. Murray*, & Co. is established, he must, as against *Clementson*, the acceptor, and the complainant as drawer of the bill, be considered as a *bona fide* holder for a valuable consideration; and therefore the consideration for making the bill cannot, against him, be inquired into.

The dispute resting between the complainant and *Payson*, it is not necessary to say any thing as to the other defendant, *Lorman*, who has been otherwise paid. But with respect to *Payson's* creditors, for whose benefit the defence to this suit may be set up, it is proper to remark, that they are entitled to whatever was his right; and also that it was an act of justice in him to do for his creditors what a proper regard for his own interest would have induced him to do for himself.

It appears that when the bill was filed, an injunction was prayed for to prevent the defendants from delivering to any person, or negotiating the accepted bill; but as a bond was not filed, no order was taken on that part of the application, and there is nothing to show in what situation

the bill is now held—*Decreed*, that the bill be dismissed with costs. The complainant appealed to this court.

The cause was argued before CHASE, Ch. J. and BU-CHANAN, and NICHOLSON, J.

*Martin*, for the Appellant, contended, that the endorsing of bills by *Payson* was not such a transaction as constituted him a factor; that buying and selling bills constituted the party a factor; but it was not within the character of a factor to endorse bills, and he could not retain a lien for any balance of account or supposed liability.

*W. Dorsey*, for the Appellees, referred to *Jourdaine vs. Lefevre*, 1 *Esp. Rep.* 66; and *Walker vs. Birch*, 6 *T. R.* 258.

DECREE AFFIRMED.

## DICKINSON vs. HASLET.

APPEAL from *Baltimore* County Court. *Assumpsit* for money had and received, for money laid out and expended, and for money lent and advanced, brought by a shipper of goods against the captain and consignee of the cargo, to recover money retained for freight, &c. The general issue was pleaded.

In an action by a shipper of goods against the consignee of the cargo, to recover money retained for freight—*Held*, that the plaintiff was at liberty to show the vessel not to have been sea worthy at the commencement of her voyage, in order to resist the defendant's claim to freight; and if the jury believed the vessel not to have been sea worthy, and competent to perform the voyage at the time of its commencement that then the defendant was not entitled to retain any thing for freight, and that the plaintiff was entitled to recover the amount so retained.

1. At the trial the plaintiff, (now appellee,) gave in evidence a bill of lading, dated the 11th of March 1806, of certain goods shipped by the plaintiff on board the schooner called *The Experiment*, whereof the defendant was master, on a voyage from *Baltimore* to *Barbadoes*, or a market, to be delivered to the defendant, or to his assigns, he or they paying freight for the said goods, &c. one half the freight to be paid at the port of delivery, and the other half upon the return of the schooner to *Baltimore*, with primage and average accustomed. He further gave in evidence an account rendered by the defendant to the plaintiff, charging him with 5 pr. ct. commission, transient and county tax, freight, storage, and a bill of exchange, and crediting him with the proceeds of the sale of the cargo. That the schooner *Experiment* sailed from the port of *Baltimore*, on her said voyage, on the 14th of March 1806, and on the 31st of the same month arrived at the Island of *Bermuda;* and that the goods mentioned in the bill of lading were there landed